This is an appeal from an order on the application of the testamentary trustees of the estate of John T. Murphy, deceased, approving their account filed July 29, 1933.
The account covers the transactions of the trustees during the[1] period from January 1, 1927, to December 31, 1932. The present trustees are H.H. Pigott, of Helena, R.P. Heren, of Denver, Colorado, and W. Binney Tait, now of London, England. Their statement shows transactions involving large sums of money, and includes partial explanatory statements respecting the affairs of the Powder River Land Cattle Company, which company was organized by Mr. Murphy about two years prior to his death, for the handling of his land and cattle business in the Powder River country. At the time of his death Mr. Murphy was the sole owner of the stock of the company, except ten shares held by Albert L. Smith and ten shares owned by R.P. Heren. The trustees, by virtue of their office, acted as the trustees of the company. Mr. Massena Bullard, one of the trustees, died in 1915, and Mr. W. Binney Tait was appointed in his place by the other trustees. Mr. Smith resigned in 1927, the resignation to take effect January 1, 1928, and he died shortly thereafter. Mr. Pigott was appointed in his place by the other two trustees.
The heirs of the estate at the time of Mr. Murphy's death were his two daughters, one of whom died before the time fixed in the will for distribution. Her distributive share went to the other heirs according to the provisions of the will. The living heirs are Mrs. Frances D.M. Tait, daughter, now living in London, England, John T. Murphy, Jr., son of deceased, and his three sons — John T. Murphy III, William M. Murphy and J. Clare Murphy. John T. Murphy II and his son J. Clare Murphy objected to the account of the trustees and limited their objections to two questions: First, that the *Page 75 
trustees W. Binney Tait and H.H. Pigott were not legally appointed trustees, and, second, that certain advances made to the Powder River Land Cattle Company, and to Mrs. Tait, were unauthorized and contrary to the directions for the trust in the will. A petition was filed praying the court to appoint a competent accountant to check over the books and furnish such additional statement as the court should direct. The report showed that the sum of $144,350 had been advanced by the trust estate to the Powder River Land Cattle Company and that $34,350 had been advanced to the same company for and on account of Mrs. Tait.
The account was approved in its entirety and an order made directing the trustees to engage a trust company to take over the affairs of the trust. Thereupon an appeal was filed by objector, John T. Murphy, Jr., through his attorneys, and the appeal was expressly based upon and limited to the alleged error of the court in allowing the trustees to invest money of the trust estate in loans to the Powder River Land Cattle Company and to Mrs. Tait.
Considerable space was used in the briefs of counsel upon the question of the regularity of the appointment of W. Binney Tait and H.H. Pigott as trustees. Since the notice of appeal expressly limits the appeal to that part of the judgment which applies to the loans, we confine our decision to that question, and disregard the extensive argument of counsel for both sides respecting other questions not in issue on this appeal. (See sec. 9739, Rev. Codes 1921, and cases cited thereafter.)
There was no testimony offered by the objectors, and no suggestion of error in the accounting is made. The testimony of Mr. Pigott and Mr. Heren was to the effect that the loans above mentioned were made to protect the property of the Powder River Land Cattle Company, which was an important part of the estate in their charge. There would appear to be no valid objection to the loan made to this company direct from the trustees, inasmuch as it was their duty as trustees to preserve the property of the estate even though *Page 76 
it be represented by part of the stock in a corporation. One-fourth of the stock of the corporation had been distributed to the widow of the deceased, Mrs. Rittenhouse, and one-half of the remainder to the daughter, Mrs. Frances D.M. Tait. Mrs. Rittenhouse furnished her share of the advances necessary to keep the cattle company going, it would seem, though there is no direct testimony on that question; but, since there is no objection, we assume such was the fact. Mrs. Tait was unable to furnish her share of these necessary advances representing her stockholder's interest.
The proof showed that the company in recent years had been losing money, which is characteristic of most ranch property in Montana in the period covered by the account. There is no objection that the cattle company has not properly applied these funds to the preservation of its property. If the funds had not been advanced, the company would have suffered very material losses, as appears from the evidence. The fact that Mrs. Tait was not able to furnish her share of the necessary advances was unfortunate, but such misfortune would not have excused the trustees from providing the necessary funds to keep the corporation intact and in business. We quote sections 14 and 15 of the will:
"14. I expressly direct that in the discharge of the trusts hereby created, neither of the trustees hereinabove named, nor any person selected by them to fill a vacancy in the office of trustee, shall be held to extraordinary diligence in the discharge of the trusts hereby conferred upon them, but that they shall be held only to such ordinary diligence as a prudent man should exercise in the management of his own affairs.
"15. I also direct that no bond or other security be required of either of my said trustees, or any person selected by them to fill a vacancy in the office of trustee, at any time during the continuance of the trust hereby conferred upon them, and I also expressly direct that they be permitted to manage and conduct the affairs of my estate and of the trusts committed to them according to their judgment and discretion." *Page 77 
No other source of revenue for this purpose was available. The will granted to the trustees very broad powers, and apparently provided for the continued conduct of the business of the testator as he would continue it himself, but it did not expressly authorize any loans. Instead, he directed the reinvestment of funds of the trust in property.
Mrs. Tait furnished bonds of a Hotel Investment Company, of the face value of $15,000, as collateral for the loan to her, and in the estate were Meagher county bonds of the face value of $13,000 held as security for the payment of a legacy of $600 per year for an old lady during her life. Mrs. Tait would be entitled to half of these bonds upon distribution. No suggestion appears why Mrs. Tait's Powder River stock was not hypothecated. Mr. Pigott held certain other securities to the amount of $8,000, which perhaps might have been available as further security, as appears in the testimony. As to this matter of security, we believe the trustees have not used as much diligence as they should use in protecting this loan, but circumstances not appearing in the record might have warranted their seeming negligence in this particular. At all events, it would appear that the trustees used good judgment in protecting their trust by furnishing proceeds necessary to protect the Powder River Land 
Cattle Company. The deceased would unquestionably have done likewise if he had been alive. True, the will provided that sales of property should be reinvested in property, and it did not expressly authorize loans. The fact that the trust estate was so heavily interested in the land company warranted the digression from the express terms of the will to the extent of authorizing heroic measures to preserve the trust property represented by the cattle company.
Counsel for both sides have treated these accounts as loans. We think they might more properly be treated as advances made to the Powder River Land Cattle Company to preserve its business and property. Even though losses to the estate occur through these advances, the trustees are not to be condemned for an error in judgment, provided they acted *Page 78 
in good faith and within the general powers conferred by the will of the testator. We have held that the emergency justified the advances. We are therefore compelled to affirm the decision of the lower court.
Aside from the one issue raised on the appeal, and acting under the general constitutional provision that the supreme court has general supervisory control over all the courts of the state, we make the suggestion that the direction of the testator be more closely observed. He in his will made in 1912, two years before he died, directed that "the trust estate continue to remain in force for the period of ten years from and after my death, and for such reasonable period thereafter as may be necessary to enable my trustees to complete the trusts confided in them as herein provided."
The order from which the appeal is taken is affirmed.
ASSOCIATE JUSTICES MATTHEWS, STEWART, ANDERSON and MORRIS concur in the result reached.